UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON D. FOSTER,

        Petitioner,

                            CASE NO. 04-CV-60284-AA
v.                                         HONORABLE MARIANNE O. BATTANI

S. L. BURT,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING A CERTIFICATE OF APPEALABILITY, AND
DENYING LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

**I.    Introduction**

Petitioner Leon D. Foster, a Michigan prisoner, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder and possession of a firearm during the commission of a felony following a jury trial in the Wayne County Circuit Court in 1999. He was sentenced to consecutive terms of 12 to 25 years imprisonment and two years imprisonment on those convictions. In his pleadings, Petitioner raises claims concerning the jury instructions, the exclusion of certain evidence, prosecutorial misconduct, the effectiveness of trial and appellate counsel, the failure to produce witnesses, the denial of state relief, and cumulative error. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

1

II.     **Relevant Facts and Procedural History**

Petitioner's convictions arise from the shooting death of Darryl Williams in a crack house in Detroit, Michigan on October 29, 1998. During jury selection, the trial court told the jury that reasonable doubt is "pretty substantial" and compared it to the decision-making process involved in purchasing a home. During opening arguments, defense counsel referred to Petitioner's statements to police when they arrived at the scene. The trial court excluded those statements on hearsay grounds.

At trial, Anthony Landers testified that he was near the crack house around midnight when Petitioner drove up in a car and asked to purchase five dollars worth of drugs. Landers obtained the drugs and he and Petitioner shared them on the porch of a nearby vacant house. They returned to the crack house and a man named Face agreed to give them four rocks of cocaine in exchange for the use of Petitioner's car. Petitioner gave the man his car keys. Petitioner and Landers then returned to the vacant house and smoked the cocaine. Landers returned to the crack house, then left to run an errand. When he returned, Petitioner was at the crack house with Face and Darryl Williams. It was about 7:45 a.m. and Petitioner's car was to be returned at 8:00 a.m. Williams was sitting in the living room holding an assault rifle and nodding off to sleep. Petitioner asked Face for permission to look out the window, went into the living room, and looked out of the window over Williams' head. Petitioner then grabbed Williams' rifle. Williams stood and the two men struggled over the gun. Landers heard one shot, then more shots, and ran into the basement. When he looked outside from a basement window, Landers saw Petitioner limp down the street with the rifle and fall to the ground. When Landers went upstairs, he saw Williams lying on the kitchen floor and a lot of blood. When he went outside, he saw Petitioner talking to police. Petitioner then pointed to him and yelled,

"there goes one of them." Landers admitted that he initially told police that he was just walking by when he heard shots in the house. Landers claimed that while he and Petitioner were in jail, Petitioner told him that he was trying to get the money and drugs. Landers admitted that he had been convicted of robbery and theft in the past and was on parole at the time of the shooting.

The medical examiner testified that Darryl Williams died of six gunshot wounds – to the left buttock, back of left arm, front of right forearm, penis, front of left thigh, and front of right thigh. Some of the wounds were consistent with a struggle. The medical examiner also indicated that the wound to Petitioner's foot was consistent with a struggle.

The police evidence technician testified that he found a high-powered semi-automatic rifle on the lawn of a house three doors down from the house where the shooting occurred. He explained that a semi-automatic weapon fires each time the trigger is pulled. The technician also found shell casings in the kitchen, laundry room, and middle room of the house, but did not find any casings or bullets in the living room. Red blood stains and a left shoe with heel damage were on the kitchen floor. A police firearms examiner testified that all of the bullets and casings seized from the crack house came from the rifle found by police. No fingerprints were recovered from any of the seized items.

Petitioner testified on his own behalf at trial, claiming that the shooting was done in self-defense. He testified that he had been kidnapped, forced to help sell drugs, and held hostage in the drug house. After a period of 10 to 11 hours, he tried to escape by wresting an assault rifle from Williams. He and Williams engaged in a struggle over the gun. During the struggle, the rifle discharged several times. Petitioner fell to the ground holding the gun and firing it. When he stood, Williams had gone into another room. Petitioner noticed that his left heel was shot off his foot, limped outside, and yelled for someone to call the police. When the police arrived, he

told them that he had been abducted and shot and that he had shot someone inside the house. He also identified Landers as one of the men involved in the incident. Reverend Bertha Mae Hardeman testified that Petitioner was a member of her church and that he had a reputation for being compassionate, truthful, and honest.

The trial court denied the defense motion for a directed verdict on the second-degree murder charge. During rebuttal closing argument, the prosecution referred to Petitioner's wheelchair as a trial prop. The trial court overruled a defense objection to this argument and denied a motion for mistrial. The trial court instructed the jury on second-degree murder, the lesser included offenses of manslaughter and involuntary manslaughter, the reasonable doubt standard, self-defense, and other matters.

At the close of trial, the jury found Petitioner guilty of second-degree murder and felony firearm. The trial court sentenced him to consecutive terms of 12 to 25 years imprisonment and two years imprisonment on those convictions.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals challenging the reasonable doubt jury instruction, the exclusion of Petitioner's statements to police, and prosecutorial misconduct. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence. *People v. Foster*, No. 221301 (Mich. Ct. App. July 6, 2001) (unpublished). Petitioner attempted to file an application for leave to appeal with the Michigan Supreme Court, but his application was rejected as untimely.

Petitioner subsequently filed a motion for relief from judgment with the trial court raising claims of ineffective assistance of trial and appellate counsel, the failure to produce witnesses, and prosecutorial misconduct. The trial court denied the motion. *People v. Foster*, 98–12671-01 (Wayne Co. Cir. Ct. April 16, 2002). Petitioner filed an application for leave to appeal with the

Michigan Court of Appeals, which was dismissed for failure to comply with filing requirements. *People v. Foster*, No. (Mich. Ct. App. Jan. 2, 2003). Petitioner sought leave to appeal with the Michigan Supreme Court, which remanded the case to the Michigan Court of Appeals for consideration of his application. *People v. Foster*, No. 123354 (Mich. S. Ct. July 28, 2003). On remand, the Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Foster*, No. 241644 (Mich. Ct. App. Nov. 14, 2003). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v. Foster*, No. 125576 (Mich. S. Ct. Oct. 25, 2004).

Petitioner thereafter filed the present petition for writ of habeas corpus asserting the following claims:

I. The trial court's reasonable doubt instruction violated due process.

II. The trial court erred in refusing to allow Petitioner's statements to police into evidence.

III. The prosecutor engaged in misconduct by referring to Petitioner's wheelchair as a trial prop.

IV. Appellate counsel was ineffective for failing to raise additional issues on direct appeal.

V. Trial counsel was ineffective for failing to adequately investigate and challenged the prosecution's firearms expert.

VI. The prosecution violated his constitutional rights by failing to produce witnesses.

VII. The prosecutor engaged in misconduct by inflaming and misleading the jury.

VIII. The Michigan Court of Appeals violated due process by failing to consider the merits of his claims as instructed by the Michigan Supreme Court.

    IX.    Petitioner is entitled to habeas relief based upon cumulative error.

Respondent has filed an answer to the petition contending that the claims should be denied based upon procedural default and/or for lack of merit. Petitioner has filed a reply to that answer.

### III.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that

6

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**IV.     Analysis**

    A.     <u>Procedural Default of Habeas Claims I, II, and III</u>

In his first three habeas claims, Petitioner alleges that he is entitled to habeas relief because the trial court erred in instructing the jury on reasonable doubt, because the trial court erred in excluding his statements to police, and because the prosecutor engaged in misconduct by referring to his wheelchair as a trial prop. Respondent contends that the claims are barred by procedural default because Petitioner failed to timely appeal the Michigan Court of Appeals' decision denying relief on the claims to the Michigan Supreme Court.

A state prisoner's habeas corpus claims are procedurally defaulted if the prisoner has failed to comply with an independent and adequate state procedural rule, thus causing default of the prisoner's federal claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). This can occur when an individual fails to present an issue to a state appellate court upon the only opportunity to do so. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Rust v. Zant*, 17 F.3d 155, 160 (6th Cir. 1994). In *Coleman*, the United States Supreme Court held that if the decision of the last state court to which a habeas petitioner presented his federal claims fairly appeared to rest primarily on federal law, or to be interwoven with federal law, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition. *Id.* at 735. The Court went on to note:

> This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims [citation omitted].

*Id.* at 735 n.1.

The record demonstrates that Petitioner did not timely seek review of his first three

habeas claims by presenting those issues to the Michigan Supreme Court on direct appeal of his convictions. The Michigan Supreme Court rejected Petitioner's application for leave to appeal regarding those issues because he submitted the application beyond the 56-day time period for seeking such review under Michigan Court Rule 7.302(C)(2). Thus, Petitioner procedurally defaulted his first three habeas claims in the state courts.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). The cause and prejudice test should be applied to all occasions where a procedural default bars state litigation of a constitutional claim. *See Coleman*, 501 U.S. at 750. To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. at 488. A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988); *Rust*, 17 F.3d at 161.

In this case, Petitioner fails to establish cause to excuse his failure to timely seek leave to appeal the Michigan Court of Appeals' July 6, 2001 decision to the Michigan Supreme Court. Petitioner claims that he gave the documents to prison officials within the 56-day period and argues that the "prison mailbox rule" should be applied. The Michigan courts, however, have declined to adopt the mailbox rule with regard to the filing of state court pleadings. *See Walker-Bey v. Dept. of Corrections*, 222 Mich. App. 605, 606 (1997). Further, the record reveals that appellate counsel specifically informed Petitioner that his application had to be filed within the 56-day time period. Petitioner has thus failed to establish cause to excuse his failure

to timely seek review of his convictions in the Michigan Supreme Court.

This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000) (Gadola, J.). Nonetheless, the Court notes that Petitioner cannot establish prejudice as his underlying claims lack merit for the reasons stated by the Michigan Court of Appeals. *See Foster*, No. 221301 at *1-3.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995); *Murray v. Carrier*, 477 U.S. at 496. ""[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His first three habeas claims are thus barred by the doctrine of procedural default and do not warrant habeas relief.

      B.    <u>Procedural Default of Habeas Claims V, VI, and VII</u>

In his fifth through seventh habeas claims, Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to challenge the state's firearms expert, the parties failed to produce witnesses, and the prosecution engaged in misconduct. Respondent contends that these claims are barred by procedural default because Petitioner failed to raise

10

them on direct appeal and failed to establish cause and prejudice or a miscarriage of justice. Both Michigan appellate courts denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Id*. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

Here, the Michigan Supreme Court relied upon Michigan Court Rule 6.508(D) in denying Petitioner leave to appeal. That rule provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D). The state court's decision, while brief, was based upon an independent and adequate state

11

procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Further, the record reveals that the trial court denied the motion for relief from judgment in part because Petitioner failed to establish cause (that appellate counsel was ineffective) for not raising the claims on direct appeal and failed to establish prejudice (that trial counsel was ineffective). *Cf. Abela v. Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (Michigan Supreme Court's reference to MCR 6.508(D) may not be clear procedural default when a lower court denies relief on the merits).

As discussed *supra*, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). The "cause" standard in procedural default cases "requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citations omitted). Such factors may include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *Id*. at 493-94.

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner

12

must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d

13

56, 59 (6th Cir. 1990). Petitioner has failed to show that by omitting the claims presented in his subsequent motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented viable claims concerning the reasonable doubt jury instruction, the exclusion of Petitioner's statements to police, and prosecutorial misconduct on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable. Petitioner has not shown that he was denied the effective assistance of appellate counsel. He has thus failed to establish cause to excuse his default.

As noted, this Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long*, 722 F.2d at 289. Nonetheless, the Court briefly notes that Petitioner's defaulted claims lack merit.

First, Petitioner has not established that trial counsel was ineffective under the standard set forth in *Strickland, supra*. He has not shown that trial counsel was deficient with regard to challenging the weapons expert. He has not shown what further investigation counsel could have or should have done, nor has he demonstrated how such further investigation would have assisted in his defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not warrant habeas relief); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions do not provide sufficient basis for an evidentiary hearing in habeas proceedings). Petitioner has similarly failed to demonstrate that he was prejudiced by counsel's alleged deficiencies, particularly given the evidence of guilt presented at trial.

Second, Petitioner has not shown what witnesses should have been presented to testify

14

as to Darryl Williams' mental state or how such witnesses would have supported his defense. The jury was well aware of Petitioner's claim of self-defense and the testimony indicating that the shooting occurred during a struggle over Williams' rifle. Petitioner has not established that his confrontation rights, or any other constitutional rights, were violated. As noted, conclusory allegations are insufficient to warrant habeas relief.

Third, Petitioner has not established that any prosecutorial comments inflamed the jury or were otherwise so prejudicial as to deny him a fundamentally fair trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). The record reveals that the prosecutor's arguments were based upon the testimony presented or reasonable inferences therefrom, and/or were made in response to defense arguments. Petitioner has thus failed to establish cause or prejudice so as to overcome his procedural default in the state courts.

Lastly, as discussed *supra*, Petitioner has not established that a fundamental miscarriage of justice has occurred under the standards set forth in *Schlup*, 513 U.S. at 324, 326-27, and *Bousley, supra*, 523 U.S. at 624. These habeas claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

    C.    <u>Ineffective Assistance of Appellate Counsel - Habeas Claim III</u>

Petitioner also asserts, as a distinct issue, that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing claims on his appeal as of right. Because the Court finds that Petitioner's underlying claims lack merit, however, Petitioner cannot establish that appellate counsel was deficient or that he was prejudiced by appellate counsel's performance as required under *Strickland, supra*. Habeas relief is not warranted on this claim.

D.  State Appellate Error - Habeas Claim VIII

Petitioner also alleges that he is entitled to habeas relief because the Michigan Court of Appeals failed to properly consider his application for leave to appeal the denial of his motion for relief from judgment on remand from the Michigan Supreme Court.  Respondent contends that this claim lacks merit.

Petitioner alleges that the Michigan Court of Appeals failed to properly comply with the Michigan Supreme Court's remand order.  This Court, however, may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Perceived errors in the application of state law are not cognizable as grounds for federal habeas relief.  *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Furthermore, the Michigan Supreme Court had an opportunity to review the Michigan Court of Appeals' decision after the remand and denied leave to appeal.  State courts are the final arbiters of state law and federal courts will not address perceived errors of state law on habeas review.  *See, e.g., Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Petitioner has failed to allege a constitutional violation as to this claim.  Habeas relief is not warranted.

E.  Cumulative Error - Habeas Claim IX

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial.  Respondent contends that this claim lacks merit.

Petitioner is not entitled to relief based upon the cumulative effect of the alleged errors at trial given this Court's determination that Petitioner's claims are procedurally defaulted and/or lack merit.  Further, the United States Court of Appeals for the Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002).  Habeas

16

relief is therefore not warranted on this claim.

**V.     Conclusion**

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

For the reasons stated *supra*, this Court concludes that jurists of reasons would not find the Court's procedural ruling debatable, nor has Petitioner made a substantial showing of the

17

denial of a constitutional right as to his habeas claims. No certificate of appealability is warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and that leave to proceed on appeal *in forma pauperis* is **DENIED**.



                                         s/Marianne O. Battani
                                         MARIANNE O. BATTANI
                                         UNITED STATES DISTRICT JUDGE

DATED: March 29, 2006